UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VIRGIL ROGERS,

     Plaintiff

     v.

JOHN PHELAN, Secretary of the Department
of the Navy, in his official capacity,[1]

     Defendant.

Civil Action No. 23-3499 (CKK)

### MEMORANDUM OPINION
(March 30, 2026)

This suit arises from Plaintiff Virgil Roger's request for relief on his alleged claims of:

(1) racial discrimination; (2) retaliation; (3) constructive discharge; (4) gender discrimination; (5)

genetic information discrimination; (6) color discrimination; and (7) age discrimination. *See*

Complaint, ECF No. 23. Defendant John Phelan, in his official capacity as Secretary of the

Department of the Navy ("Defendant"), has filed a [34] Motion to Dismiss Plaintiff's Complaint,

pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] In brief, Defendant asserts that: (1)

Plaintiff's lawsuit is untimely; (2) Plaintiff failed to administratively exhaust his discrimination

and retaliation claims; (3) Plaintiff's discrimination claims are not cognizable; and (4) Plaintiff's

claims for retaliation and constructive discharge fail as a matter of law. Plaintiff Virgil Rogers

---

[1] Pursuant to Fed. R. Civ. P. 25 (d), John Phelan has been automatically substituted for Carlos Del Toro, whom the parties' pleadings name as Defendant.

[2] Defendant's motion to dismiss was consolidated with his opposition to Plaintiff's motion to proceed pseudonymously, which has been withdrawn.

("Plaintiff" or "Mr. Rogers") filed his [37] Opposition to Defendant's Motion to Dismiss, and therein, he withdrew his motion to proceed pseudonymously as well as his clams for genetic information discrimination, color discrimination, and age discrimination.[3]  Accordingly, the Court no longer need consider those issues, as those claims may be denied with prejudice.  This Memorandum Opinion will address Defendant's motion to dismiss Plaintiff's remaining claims of racial and gender discrimination, retaliation, and constructive discharge, and Plaintiff's opposition thereto, including Plaintiff's request that he be permitted to amend his Complaint if the Court finds it deficient.  For the reasons set forth herein, Defendant's Motion to Dismiss is GRANTED.  A separate Order accompanies this Opinion.

## I. BACKGROUND

### A. Factual Background

The following factual assertions, taken from Plaintiff's Complaint, are presumed to be true for purposes of evaluating the Complaint's sufficiency under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Beginning in July 2014, September 22, 1981, Plaintiff, an African American male, was employed by the Navy as a contract specialist under the Naval Facilities Engineering Command at Naval Support Activity in Bahrain.  Compl., ECF No. 23, at 4 ¶¶ 11, 12.[4]  Plaintiff was the custodial parent of three children, who at the time of the actions

---

[3] In connection with this Memorandum Opinion, the Court considered the following: (1) Plaintiff's [23] Complaint; (2) Defendant's [34] Motion to Dismiss, the [34-1] Memorandum in support thereof ("Def.'s Mem."), and the exhibits attached thereto, of which this Court takes judicial notice; (3) Plaintiff's [37] Memorandum in Opposition to the Motion to Dismiss ("Pl.'s Opp'n"); and (4) Defendant's [40] Reply ("Def.'s Reply").  In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

[4] The Court notes that the Complaint is misnumbered in several places, with multiple occurrences of the same paragraph number.  When referencing a paragraph number, the Court will also reference the page number.

giving rise to the Complaint were five, seven, and eight years in age. *Id.* at 4 ¶ 13. The children attended the Department of Defense School in Bahrain. *Id.* at 4 ¶ 14.

On May 27, 2015, "a large group of the Defendant's agents – all of whom were Caucasian," "converged upon the Bahrain School and abducted all of [Plaintiff's] children under threat of arms." *Id.* at 4 ¶ 17. The school principal failed to prevent the seizure of the children and assisted in facilitating it. *Id.* Defendant allegedly "forcibly removed the clothing" from the children and "battered each" by touching and probing the children's genitals. *Id.* at 5 ¶ 19. Defendant "forcibly interrogated" the children on camera and allegedly "attempted to coerce the children to falsely implicate [Plaintiff] to some abuse of the children." *Id.* at 5 ¶ 22. The children were not provided an attorney and no parent was present. *Id.* at 5 ¶ 23.

Defendant informed Plaintiff later that same day "that its agents had seized the children and probed intimate parts of their nude bodies and interrogated them." *Id.* at 5 ¶ 24. Plaintiff demanded legal counsel, but Defendant refused. *Id.* Defendant informed Plaintiff that it took the children because "they were seeking to uncover evidence of abuse by [Plaintiff] and based upon Defendant's suspicion of the existence of a disabling condition by one or more of [Plaintiff's] children. *Id.* at 6 ¶ 25. Plaintiff was never under criminal investigation for any crime, nor had there ever been any criminal claims of abuse. *Id.* at 6 ¶ 26. Defendant did not have a warrant authorizing its search of the children and informed Plaintiff that it was not obligated to obtain consent or have a warrant. *Id.* at 6 ¶¶ 29-30.

On May 28, 2015, Plaintiff filed a complaint with the Installation Commanding Officer "for this adverse action of racially based violence and discrimination." *Id.* at 7 ¶ 33. The next day, Defendant "battered and falsely imprisoned" Plaintiff in front of his children, colleagues, and bystanders, "aimed deadly weapons" at him, emptied Plaintiff's pockets, and injured him.

*Id.* at 7 ¶ 35. Defendant did not have keys to remove the handcuffs and subjected Plaintiff "to a painful procedure" using bolt cutters to remove the handcuffs. *Id.* at 7 ¶ 36. Two days later, Plaintiff requested that he be released from his job "due to his fear for his life and his families' life." *Id.* at 8 ¶ 41. In August 2015, Plaintiff left employment with Defendant and began a different civil service position, earning $10,000 less annually at a lower grade. *Id.* at 8 ¶ 42.

### B. Procedural Background

On November 19, 2015, Plaintiff filed a formal EEO complaint alleging that he was discriminated against on the bases of race, color, sex, and reprisal, and that he was subjected to a hostile work environment and an August 7, 2015 constructive discharge. Administrative Complaint, Def.'s Ex. 1. On July 11, 2016, the Navy's Equal Employment Opportunity ("EEO") office completed a Report of Investigation, which found insufficient evidence of discriminatory intent. Compl., ECF No. 23, at 3 ¶ 6. On October 13, 2016, the Navy's EEO Office's Final Agency Decision found that the Navy did not discriminate against Plaintiff based on race, color, sex, and reprisal and that he was not constructively discharged. Final Agency Decision, Def.'s Ex. 2.

On November 14, 2016, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB"). *See Rogers v. Dep't of Navy*, No. DC-0752-17-0123-1-1, 2017 MSPB Lexis 3871, at \*1 (M.S.P.B. Sept. 8, 2017). The MSPB dismissed the appeal for a lack of jurisdiction. *Id.* at \*13.[5] Plaintiff filed a petition for review of the initial decision to the full MSPB, and on April 10, 2023, the MSPB issued a final order ("MSPB Final Order") denying the petition for review and affirming the initial decision. *See Rogers v. Dep't of Navy*, No. DC-0752-17-0123-1-1, 2023

---

[5] Plaintiff notes that his appeal was dismissed by the MSPB Administrative Law Judge "without conducting any hearings or receiving any sworn testimony." Pl.'s Opp'n, ECF No. 37, at 3.

MSPB Lexis 1889 (M.S.P.B. Apr. 10, 2023).[6]

On June 8, 2023, Plaintiff filed an appeal against the MSPB in the Court of Appeals for the Federal Circuit ("the Federal Circuit"). *See* Not. of Appeal, ECF No. 1. On June 28, 2023, Plaintiff filed a Statement Concerning Discrimination. *See* Pl.'s Statement, ECF No. 9. In that Statement, Plaintiff explained that he raised discrimination claims based on race/color, age, sex/gender, and harassment in front of the MSPB. *Id.* at 2. He also checked the box on the final page, which states "I did claim that I was discriminated against before the MSPB or the Arbitrator and I do not wish to abandon my discrimination claims." *Id.* at 3 (emphasis in original).

On July 24, 2023, the Federal Circuit entered a show cause order, ECF No. 12, and explained that it does not have jurisdiction to review appeals of MSPB decisions which raise claims of discrimination as those "cases belong in federal district court," pursuant to 5 U.S.C. § 7703(b)(2), and *Perry v. MSPB*, 582 U.S. 420 (2017). *Id.* at 1-2. The Federal Circuit ordered the parties to brief whether Plaintiff's case should be dismissed or transferred, *id.* at 2, and the MSPB responded that this appeal presented a "mixed case" over which the Federal Circuit lacked jurisdiction and requested that the court transfer the case to this Court. *See* MSPB Resp. to Order of Court, ECF No. 13, at 5, and n.2 (noting that "the appeal is untimely under 5 U.S.C. § 7703(b)(2) because it was not filed within 30 days of the Board's final decision," but suggesting that the transferee court decide "issues of timeliness and whether the time limit may be tolled"). On October 18, 2023, the Federal Circuit transferred the petition for review to this Court, *see Order*, ECF No. 17, and on January 12, 2024, Plaintiff filed his [23] Complaint in this Court. In

---

[6] Plaintiff notes that "the MSPB did not have a quorum from on/about January 2017 through January 2021, and therefore no action was taken on [his] case" during that time. Compl., ECF No. 23 at 3 ¶ 8.

response thereto, Defendant filed the pending Motion to Dismiss.

## II. LEGAL STANDARD

A complaint should be dismissed if it fails to state a claim upon which relief can be granted. Federal Rule 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded factual content "allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") noted that the *Iqbal* pleading standard applies to all civil actions, including discrimination suits. *Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) (Title VII retaliation claim requires pleading facts that "support a reasonable inference of causality" under *Iqbal*); *Keith v. Gov't Accountability Office*, Civ. A No. 21-2010 (RC), 2022 WL 3715776, at *5 (D.D.C. Aug. 29, 2022) (applying *Iqbal* to discrimination and retaliation claims).

In considering a Rule 12(b)(6) motion, "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettings v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The court need not however accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see*

*also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A trial court may dismiss a complaint only if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Wardrick v. Fed. Bureau of Prisons*, Civ. A. No. 19-184, 2020 WL 1821133, at *4 (D.D.C. Apr. 10, 2020) (quoting *Hurd v. District of Columbia*, 864 F. 3d 671, 678 (D.C. Cir. 2017)). For example, a court may take judicial notice of a plaintiff's Equal Employment Opportunity ("EEO") charge and the agency's determination. *Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009); *accord Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 120 n.2 (D.D.C. 2011) (noting that the complaint "necessarily relies upon the fact of the charge and the letter [of determination] in pleading that administrative proceedings were pursued before this action was begun").

Furthermore, "where a document is referred to in the complaint or is central to plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. App'x 3 (D.C. Cir. 2002). Moreover, the document need not be produced by the plaintiff in the complaint but may instead be produced by the defendant in a motion to dismiss. *Ward*, 768 F. Supp. 2d at 119 & n.2 (declining to convert a motion to dismiss into a motion for summary judgment). "[A] document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016) (citation omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on

which it relied." *Id.* (internal quotation marks and citation omitted).

Accordingly, for purposes of the pending motion and without converting the motion to dismiss into a motion for summary judgment, the Court takes judicial notice of the proceedings in the Federal Circuit, including Defendant's Federal Circuit Petition for Review and the MSPB Final Order, ECF No. 1-1; Defendant's Administrative Complaint, which is attached as Ex. 1 to Defendant's Motion; the Final Agency Decision, attached as Ex. 2; the Notice of Final Interview, attached as Ex. 3; and the Naval Security Forces Bahrain Passdown sheet from May 27, 2015, attached as Exhibit 5.

## III. ANALYSIS

The Court will address in turn Defendant's arguments that (1) Plaintiff's lawsuit is untimely; (2) Plaintiff failed to administratively exhaust his discrimination and retaliation claims; (3) Plaintiff's discrimination claims are not cognizable; and (4) Plaintiff's claims for retaliation and constructive discharge fail as a matter of law.

### A. Plaintiff's Lawsuit is Untimely

Defendant asserts, and this Court agrees, that Plaintiff failed to timely file his lawsuit in District Court. Pursuant to 5 U.S.C. § 7703(b)(1), a federal employee who is subjected to an adverse personnel action may complain to the MSPB, and if the MSPB rules against him, he may appeal to the Court of Appeals for the Federal Circuit "within 60 days." If, however, a plaintiff's case is a "mixed case" including discrimination claims, then the plaintiff must file his civil action in federal district court "within 30 days after the date the individual filing the case received notice of the judicially reviewable action." *Id.* § 7703(b)(2). In this case, Plaintiff cannot dispute that his appeal is governed by Section 7703(b)(2), or that it should have been filed in federal district court within thirty days from the MSBP's April 10, 2023 final order. However, Plaintiff waited

8

fifty-eight days, until June 8, 2023, to file his appeal in the Federal Circuit.[7]  Plaintiff relies on the doctrine of equitable tolling to save his untimely appeal.

## 1. Appropriateness of Equitable Tolling

Defendant acknowledges that the thirty-day time limitation in Section 7702(b)(2) is a "nonjurisdictional claims-processing rule" that is subject to equitable tolling.  *Robinson v. Dep't of Homeland Sec.*, 71 F.4th 51, 56-58 (D.C. Cir. 2023).  When a plaintiff seeks equitable tolling, he must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  To satisfy the "extraordinary circumstance" prong, the plaintiff must demonstrate that the "circumstances that caused [his] delay are both extraordinary *and* beyond [his] control."  *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257 (2016) (emphasis in original).  Equitable tolling is not available when a plaintiff misses a deadline because of a "garden variety claim of excusable neglect" or a "simple 'miscalculation.'"  *Holland v. Florida*, 560 U.S. 631, 651-652 (2010).  Instead, it is "appropriate only in rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result."  *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015) (internal quotation marks and citation omitted).

### a. Plaintiff Demonstrates No Extraordinary Circumstances Beyond his Control

Defendant focuses its argument on Plaintiff's failure to meet the extraordinary circumstances prong.  Defendant notes that the April 10, 2023 MSPB Final Order contained a

---

[7] While Plaintiff states that he "noted a timely petition for review to the Court of Appeals for the Federal Circuit on June 8, 2023, within the statutory timeline contained in the Board's order," this statement wholly ignores that Plaintiff's case was a "mixed case" that should have been filed in federal district court within thirty days. Pl.'s Opp'n, ECF No. 37, at 3.

section titled "Notice of Appeal Rights," which explains how and where to obtain review of the

final decision. MSPB Final Order, ECF No. 1-1. That section states in relevant part that:

> **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision — <u>including a disposition of your discrimination claims</u> — by filing a civil action with an appropriate U.S. district court (not the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. _____, 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.

MSPB Final Order, ECF No. 1-1, at 4 (emphasis in original). Plaintiff acknowledged that he

received the Order on April 11, 2023, ECF No. 1-1, at 1, but instead of filing for review in a

district court within thirty days, Plaintiff filed a petition in the Federal Circuit on June 8, 2023

(applying the 60-day deadline). Plaintiff does not claim that he was unaware that his case

involved claims of discrimination. In fact, on June 28, 2023, Plaintiff filed a Statement

Concerning Discrimination (in connection with his Federal Circuit case) in which he checked a

box indicating that he argued in front of the MSPB that his adverse employment action was

attributable to discrimination and that he did "<u>not</u> wish to abandon" those claims. Statement

Concerning Discrimination, ECF No. 9, at 2 (emphasis in original).

As previously noted herein, on July 24, 2023, the Federal Circuit issued a show cause order

whereby the parties were directed to indicate whether the case should be dismissed or transferred

to another court. ECF No. 12. Because Plaintiff's discrimination claims deprived the Federal

Circuit of jurisdiction, by Order dated October 18, 2023, and pursuant to 28 U.S.C. § 1631, the

Federal Circuit transferred Plaintiff's case to this District Court. However, to be considered

timely in this Court, Plaintiff would have had to file his suit by May 11, 2023, and he did not.

10

Accordingly, Plaintiff relies on the doctrine of equitable tolling, whereby he must demonstrate some extraordinary circumstances beyond his control that resulted in his delayed filing.

In his Opposition – for the first time – Plaintiff asserts that he was misled by representatives of Defendant insofar as he alleges that he received phone calls at his Government office on or about April 27, 2023 "from what appeared to be an overseas military facility." Pl.'s Opp'n, ECF No. 37, at 6. Plaintiff explains that he answered a call "from someone claiming to be an Associate Counsel for Naval Facilities Command" and that individual confirmed Plaintiff's receipt of the MSPB order and advised him to "ensure that you submit your filing to the Federal Circuit Court of Appeals within 60 days to ensure [that it is] filed timely since [it has] been pending for quite a long time." *Id.* at 7. Plaintiff claims that he "understood the caller to be providing him good faith advice on the matters at issue between he and the Navy, and Plaintiff therefore relied upon this advice in deciding that he would file the matter in the CAFC as opposed to the district court." *Id.*[8]

In turn, Defendant notes that Plaintiff's "factual allegations included for the first time in an opposition to a motion to dismiss cannot save Plaintiff's Complaint." Def.'s Reply, ECF No. 40, at 6 (citing *Durand v. District of Columbia*, 38 F. Supp. 3d 119, 129 (D.D.C. 2013)). Plaintiff "may not amend [his] complaint by the briefs in opposition to a motion to dismiss." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010). Even if Plaintiff were permitted to amend his Complaint to add these allegations, this Court agrees with Defendant that the instant case is factually on point with *Brookens v. Acosta*, 297 F. Supp. 3d 40 (D.D.C. 2018)

---

[8] In his Opposition, ECF No. 37, at 7, Plaintiff claims also that the government's delay prior to this matter being filed in federal court "prejudiced [him] tremendously," but that delay in issuance of the MSPB Final Order, while unfortunate, has no bearing on the issue of why Plaintiff failed to make a timely filing in District Court once he received the MSPB Final Order.

*aff'd sub nom.*, *Brookens v. Dep't of Lab.*, Civ. A. No. 18-5129, 2018 WL 5118489, at *1 (D.C. Cir. Sept. 19, 2018), where the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") concluded that "[a]ssuming that the 30-day time limit is subject to equitable tolling, appellant failed to offer a valid basis to toll that deadline." In *Brookens*, the plaintiff filed an appeal of an MSPB decision in the Federal Circuit, *id.* at 43; and he indicated that he did not desire to abandon his discrimination claims, so the Federal Circuit transferred the case to this Court. *Id.* at 43-44.[9] The Government moved to dismiss the case as time-barred because it exceeded the 30-day deadline. *Id.* at 44. The *Brookens* court addressed the then-uncertainty regarding whether the 30-day limitation in 5 U.S.C. § 7703(b)(2) was jurisdictional and whether equitable tolling should apply. *Id.* at 49-50. Brookens argued that he erroneously believed that the Federal Circuit was the right forum as he was confused by the MSPB's instructions, but the court explained that "misapprehension of the law is factually insufficient to toll the statute of limitations" and that any confusion about the place to file "was thus subjective and personal to Brookens, whose only real excuse is that he was proceeding *pro se*." *Id.* at 50-51.[10]

In dismissing Brookens's case as time barred, the court explained that "[w]hen [plaintiff] disregarded that clear directive and filed in the Federal Circuit, he did so at his own peril," *id.* at 51, and this Court finds that the same is true in Mr. Rogers's case. Mr. Rogers acknowledges his April 11, 2023 receipt of the April 10, 2023 MSPB Final Order and that his underlying action was based, at least in part, on alleged unlawful discrimination; yet, he failed to make a timely

---

[9] As in *Brookens*, Mr. Rogers elected not to drop his discrimination claims when he was in the Federal Circuit, even though Mr. Rogers asserts now – without further explanation – that his constructive discharge claim could be based on "the objectively intolerable conditions of the workplace" as opposed to being based on discrimination. Pl.'s Opp'n, ECF No. 31, at 13.

[10] As with Brookens, Mr. Rogers was acting *pro se* when he filed in the Federal Circuit, but both Brookens and Mr. Rogers possess law degrees. *Brookens*, 297 F. Supp. 3d at 51; Compl, ECF No. 23, at 2 ¶ 1.

filing for review in a district court despite the clear instructions provided in the Final Order. Even considering Plaintiff's claims that he relied upon "advice" provided during a telephone call he received – on a "line [that] had a delay and was not perfectly clear," *see* Opp'n, ECF No. 37, at 7 – this does not excuse Plaintiff from ignoring the unambiguous language set forth in the MSPB Final Order. *See* MSPB Final Order, at 2 ("By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file."); *id.* (warning that "[f]ailure to file within the applicable time limit may result in the dismissal of your case by your chosen forum"); *id.* (noting that if review is sought, one should "carefully follow all filing time limitations and requirements"); at 4 (containing a section entitled: **Judicial or EEOC review of cases involving a claim of discrimination**) (emphasis in original).

As in *Brookens*, Plaintiff acted at his "own peril" in ignoring the clear directive in the Final Order and failing to file for review in a district court within thirty calendar days. Plaintiff has shown no extraordinary circumstances that warrant equitable tolling of that thirty-day time frame for filing. "The circumstances that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014). Even if Mr. Rogers was confused about where to file – because of the alleged phone call he received – equitable tolling is not appropriate. As noted in *Brookens*, if there was confusion about where to file, Plaintiff could have filed within thirty days in the Federal Circuit, "thereby safeguarding the possibility of a transfer to this Court by ensuring that the case would be timely regardless of which statute of limitations was ultimately determined to apply." *Brookens*, 287 F. Supp. 3d at 51.

Accordingly, the Court finds that this case may be dismissed solely on grounds that it is time-barred under Rule 12(b)(6). However, the Court notes that because Plaintiff has requested

– in his Opposition, as opposed to filing an amended complaint/motion to amend – that he be permitted to amend his Complaint if it is found "defective" or if the Court "refuses to toll the deadline," and because Defendant has fully briefed additional grounds for dismissal that indicate that any such amendment would be futile, as a matter of judicial efficiency, this Court considers those additional grounds in this Opinion.

### B. Plaintiff Failed to Administratively Exhaust his Discrimination and Retaliation Claims

Defendant asserts that even if Plaintiff's lawsuit was timely filed, he has "failed to exhaust his discrete discrimination and retaliation claims" because he was "first required to 'initiate contact' with an EEO counselor within forty-five days of the allegedly discriminatory action," and he did not do so. Def.'s Mem., ECF No. 34-1, at 17; *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (quoting C.F.R. § 1614.105(a)(1)). "The purpose behind the rule is to provide the agency notice and an opportunity to rectify any wrong through the conciliation process or through administrative relief." *Howard v. Evans*, 193 F. Supp. 2d 221, 227-28 (D.D.C. 2002). It is only after a plaintiff has timely sought counseling and exhausted his administrative remedies that the Court may hear the subject matter of a claim. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985). Failure to abide by the forty-five-day time limit to contact the EEO counselor and the ninety-day requirement to file a civil action are affirmative defenses for which Defendant bears the burden. *Robb v. Vilsack*, Civ. A. No. 20-0929 (RC), 2021 WL 3036796, at *6-7 (D.D.C. July 19, 2021). Therefore, a defendant who argues non-exhaustion at the motion to dismiss stage can prevail only if a plaintiff's "failure to exhaust is plain from the allegations of the complaint or the undisputed records of the administrative proceeding that are attached to or referred to in the complaint or that are subject to judicial notice." *Kelly v. Raimondo*, Civ. A. No. 20-3203 (RDM), 2022 WL 14807447, at *7 (D.D.C. Oct. 26, 2022) (citation omitted).

In this case, the incident involving Plaintiff's children occurred on May 27, 2015, and Plaintiff's incident of being detained at the school occurred on May 28, 2015. Compl., ECF No. 23, at 4 ¶ 16; at 7 ¶ 34. Accordingly, to exhaust his claims relating to those incidents, Plaintiff needed to contact the EEO counselor by July 11, 2015, and July 12, 2015, respectively, which is forty-five days from each of these incidents. But, in this case, Plaintiff made initial contact with Vanessa Givens, the EEO counselor, not earlier than August 3, 2015. *See* Notice of Final Interview from Vanessa Givens to Mr. Rogers, Def.'s Ex. 3 at 1 ("On 3 August 2015 our office was informed of your desire to file a discrimination complaint" and on "31 August 2015 you submitted the outstanding information required to complete your EEO Intake form and process your EEO complaint").

In response to Defendant's assertion of untimeliness, Mr. Rogers indicates that he "initially contacted the SE region EEO office in Jacksonville, Florida within 5 days of the May 27 incident, along with the Inspector General and his congressional representative" but no one answered, and his messages went unreturned. Pl.'s Opp'n, ECF No. 37, at 10. Plaintiff indicates also that he "continued trying to reach the EEO office for several weeks" before "receiving contact" from someone named Vanessa [Givens], who "apologized for the lengthy delay in returning the call." *Id.* Plaintiff explains that, after "clearly request[ing] to file a formal EEO complaint, and then "play[ing] phone tag for a couple more weeks," finally, on August 3, 2015, Plaintiff and Vanessa Givens were able to have a conversation. *Id.* Plaintiff acknowledges that this "history" is left out of the Notice of Final Interview and further, that the Court may require the "above facts be pled in the Complaint," and he requests leave to do so "if that is the case." Pl.'s Opp'n, ECF No. 37, at 11. In response thereto, Defendant points out, yet again, that "factual allegations, included for the first time in an opposition to a motion to dismiss, cannot save Plaintiff's Complaint."

15

*Durand v. District of Columbia*, 38 F. Supp. 3d 119, 129 (D.D.C. 2014).

In this case, Plaintiff "requests" leave to amend his Complaint to include additional facts about when he tried to contact the EEO office, arguing that the statute says, "initiate contact," and he did so, although his earlier phone calls went unanswered. But the Court notes that Ms. Givens' Notice of Final Interview indicates that August 3, 2015 is the date when the EEO Office "was informed" that Plaintiff wanted to file a discrimination complaint. Ex. 3, at 1. Furthermore, even if Mr. Rogers's amended complaint could save his discrimination and retaliation claims from the affirmative defense of failure to exhaust, the Court is left still with Mr. Rogers' inability to demonstrate that his failure to timely file his lawsuit is excusable. However, even assuming *arguendo* that Plaintiff could surmount both these hurdles, Defendant argues that Plaintiff's discrimination claims are not cognizable and further, that the retaliation and constructive discharge claims fail as a matter of law. The Court turns now to those arguments.

### C. Plaintiff's Racial and Gender Discrimination Claims

At the motion to dismiss stage, "the plaintiff must establish that (1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (citation omitted). "[A] formulaic recitation of the elements of a cause of action will not do," *Brown v. Sessions*, 774 F.3d 1016, 1020 (D.C. Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); instead, a plaintiff must allege facts that at least show a "nexus between defendants' alleged discriminatory motive and the adverse action." *Easaw v. Newport*, 253 F. Supp. 3d 22, 30 (D.D.C. 2017).

Regarding his racial discrimination claim, Plaintiff claims that Defendant's "lynch mob type conduct, extrajudicially seizing [him] and parading him in public in handcuffs at gunpoint,

16

abducting his children and forcing their clothes from their bodies was motivated at least in part because [he] was an African American employee of Defendant." Compl., ECF No. 23, at 9 ¶ 47. Regarding his gender discrimination claim, Plaintiff concludes that "Defendant engaged in discrimination against [him] because he was a male, and particularly an African American father of young children." *Id.* at 11 ¶ 20. Defendant argues however that while there is a lot of inflammatory language in Plaintiff's Complaint, he has "alleged no facts showing that any of the purported actions were connected to his protected status" of race or sex. Def.'s Mem., ECF No. 34-1, at 21. This Court agrees that Plaintiff does not provide any allegations that lead to the inference that he was treated differently because of his race or gender. Rather, Mr. Rogers's conclusory allegations are "threadbare recitals of the elements of a cause of action" that the Supreme Court cautioned against in *Iqbal*, 556 U.S. at 663.

In this case, the Plaintiff and Defendant agree that demonstrating that an adverse action was motivated by discriminatory intent is often proven with "evidence suggesting that the employer treated other employees of a different [protected status] more favorably in the same factual circumstances." *Mapp v. District of Columbia*, 993 F. Supp. 2d 22, 25 (D.D.C. 2013). Yet, in his Complaint, Mr. Rogers fails to assert any facts to support any allegation that he was treated differently and subjected to disparate treatment and adverse employment actions when compared to employees from different protected classes. Instead, Plaintiff alleges generally that "Defendants have no history of ever engaging in this type of conduct towards any Caucasian employees," Complaint, ECF No. 23 at 9 ¶ 48, and "Defendants have never engaged in warrantless seizures or body cavity invasions related to a female employee's children without first obtaining a warrant or consent." *Id.* at 11 ¶ 22. These conclusions fail to provide any information about other employees who were allegedly treated more favorably in the same

17

circumstances. Mr. Rogers proffers no facts to back up his claims that the adverse actions happened because he is a protected member of certain classes, and accordingly, this Court is unable to draw an inference of discrimination from Plaintiff's allegations. Plaintiff proffers "just a legal conclusion – and a legal conclusion is never enough." *Harris v. Mayorkas*, Civ. A. No. 21-1083, 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022) (citation omitted); *see Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (noting that the court need not accept inferences drawn by a plaintiff "if such inferences are unsupported by the facts set out in the complaint"). Accordingly, this Court finds that even if Plaintiff's lawsuit was deemed timely filed, Plaintiff's claims for racial and gender discrimination are not cognizable and should be dismissed.

### D. Plaintiff's Retaliation Claim Fails as a Matter of Law because of Timing

To survive a motion to dismiss, a claim for retaliation under Title VII must contain sufficient factual matter, accepted as true, to plausibly establish that: (1) the plaintiff engaged in a statutorily protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there is a causal connection between the two. *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003); *see also* 42 U.S.C. § 2000e-3(a). A "materially adverse action" is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted).

In this case, Defendant contests that there is a causal connection between the statutorily protected activity and the alleged adverse action. In his Complaint, Count II, alleging retaliation, Plaintiff indicates that "[u]pon reporting the racial discrimination perpetrated upon his family in the workplace to the ICO, [he] was retaliated against by being battered, falsely imprisoned himself, leading to intolerable conditions of employment and constructive discharge." Complaint, ECF No. 23, at 9 ¶ 54. While the Complaint, at 7 ¶ 33, indicates that Mr. Rogers's complaint about the

18

incident involving the children was filed "on about May 28, 2015," it also references the retaliatory actions against him as taking place the "following day, on about May 28, 2015." *Id.* at 7 ¶ 34. But, in his Opposition, Plaintiff notes that "he imprecisely pled" that he "complained 'on or about May 28'" when his complaint was actually made *"on May 27,"* which is the same day as the incident involving the children. Pl.'s Opp'n, ECF No. 37, at 12 (requesting leave to amend to correct the mistaken date).

This date correction by Plaintiff, however, still does not save Plaintiff's retaliation claim. This is because the Naval Security Forces Bahrain Passdown sheet from May 27, 2015, attached to Defendant's Motion as Exhibit 5, indicates that an order to disallow Plaintiff from entering the school was entered on the morning of May 27, 2015, prior to the incident involving the children and therefore, prior to Plaintiff's complaint regarding such incident.[11] Def.'s Reply, ECF No. 40, at 10 (emphasis added); *see also* Ex. 5. The Passdown Sheet states: "Mr. Virgil Rogers, CIV controller with NAVFAC, is verbally disbarred from DODDS compound by CO. Physical description is African-American male, 5-10, thin build, short black hair. If he tries to make his way on DODDS patrolmen are to detain, restrain and transport him to the LE desk as per SECO." Ex. 5. Therefore, even if Plaintiff made his complaint on May 27, 2015, after the children were examined, his complaint was preceded by this order to disallow him. Accordingly, there can be no causal connection between Plaintiff's protected activity (the filing of a complaint) and the alleged retaliation (being seized and handcuffed) and accordingly, Plaintiff's retaliation claim fails.

### E. Plaintiff's Constructive Discharge Claim Fails as a Matter of Law

In this case, Plaintiff claims that "Defendant's agents' extreme and outrageous conduct

---

[11] The Naval Security Forces Passdown sheet is used to convey standing orders from one shift of security forces to the next shift. Def.'s Mem., ECF No. 34-1, at 25 n.2.

19

created intolerable working conditions that compelled Plaintiff to resign." Pl.'s Opp'n, ECF No. 37, at 13. "Although a resignation is presumed to be voluntary, '[i]n certain cases, the doctrine of constructive discharge enables an employee to overcome the presumption of voluntariness and demonstrate [he] suffered an adverse employment action by showing the resignation or retirement was, in fact, not voluntary.'" *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011) (citation omitted). "In this Circuit, a finding of constructive discharge depends on whether the employer deliberately made working conditions intolerable and drove the employee out." *Id.* (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (internal quotation marks omitted). The three prongs needed to demonstrate an actionable constructive discharge claim are that: "(1) intentional discrimination existed; (2) the employer deliberately made working conditions intolerable; and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Douglas-Slade*, 793 F. Supp. 2d at 102 (citation omitted). A constructive discharge claim requires that a plaintiff plead conduct that amounts to more than that which supports a hostile work environment claim. *See René v. Granholm*, Civ. A No. 22-0519 (JEB), 2022 WL 17820342, at *7 (D.D.C. Dec. 20, 2022), *aff'd*, No. 23-5014, 2023 WL 4992746 (D.C. Cir. Aug. 3, 2023).

Defendant argues that Mr. Rogers fails to meet each of these three criteria to support his constructive discharge claim. First, as previously noted herein, this Court has found that Plaintiff's claims for racial and gender discrimination are not cognizable. "Where a plaintiff alleges that he or she was constructively discharged under Title VII and he or she fails to state a Title VII claim, the constructive discharge claim also necessarily fails to state a claim as a matter of law." *Hendrix v. Napolitano*, 77 F. Supp. 3d 188, 193 (D.D.C. 2015) (citation omitted).

Second, Plaintiff does not allege that the Navy made his working conditions intolerable.

20

Both parties acknowledge that a hostile work environment requires that the "workplace is permeated with discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). While Plaintiff alleges that the actions taken by Defendant's agents toward his children and him were severe, courts "look at the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Smith v. Jackson*, 539 F. Supp. 2d 116, 137 (D.D.C. 2008) (Kollar-Kotelly, J.) (quoting *Faragher*, 524 U.S. at 787-88).

In this case, Plaintiff alleges nothing in his Complaint about his work conditions or how they became intolerable. Instead, he alleges that an incident occurred while his children were at their school, and the following day, another incident occurred when he went to their school. Plaintiff submits that he "resigned from employment with Defendant out of fear and coercion based upon their unprovoked and unlawful battery of himself and the abduction and sexual battery of his minor children, at the hands of armed agents of the Navy," Compl., ECF No. 23, at 8 ¶ 43, but this does not explain how these incidents affected his daily work life. In the absence of allegations sufficient to plead a hostile work environment, Plaintiff's claim for constructive discharge necessarily fails. "'[T]o establish 'constructive discharge,' the plaintiff must make a further showing' beyond that needed to establish a hostile work environment." *Carter v. Nelson*, Civ. A. No. 20-5111, 2021 WL 6139250, at *2 (D.C. Cir. Dec. 27, 2021) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004)).

Third, Plaintiff alleges no "aggravating factors" in this case. This requirement to establish

21

aggravating factors creates a "relatively high threshold for what a reasonable employee would tolerate," *Kalinowki v. Gutierrez*, 435 F. Supp. 2d 55, 78-79 (D.D.C. 2006), and a plaintiff who fails to establish the existence of a hostile work environment necessarily falls short. *Peters v. District of Columbia*, 873 F. Supp. 3d 158, 204 (D.D.C. 2012). Defendant notes further that, in this case, the alleged discriminatory acts occurred in May of 2015, but Plaintiff did not leave his position until August of 2015. Compl. at 8 ¶ 42; *see* at 11 ¶ 16 (explaining that the delay in departure was "due to logistical reasons since his family was present and household goods had to be shipped"). Defendant argues, and this Court agrees, that this 3-month period, separating the alleged discriminatory actions that outraged Plaintiff from his eventual resignation, cuts against any allegation that Defendant subjected Plaintiff to intolerable working conditions. As previously noted, nor does Plaintiff in his Complaint provide any information at all about his working conditions or how they became intolerable. Accordingly, because Plaintiff fails to meet the criteria for a constructive discharge claim, the Court finds that Plaintiff's claim for constructive discharge fails as a matter of law.[12]

### F. Amendment of the Complaint is Futile

As discussed throughout this Opinion, Plaintiff has suggested/requested that the Court grant him leave to amend his Complaint regarding certain allegations in his Complaint. *See* discussion, *supra.*, at 2, 13, n.10, 15, and 18. Pursuant to Federal Rule of Civil Procedure 15 – at this point in the case – Plaintiff may amend his Complaint only with written consent from the

---

[12] Furthermore, in its Reply, Defendant notes accurately that "Plaintiff's response [to its argument about constructive discharge] fails to substantively respond to any of Defendant's points, instead just reiterating the factual allegations in his complaint." Def.'s Reply, ECF No. 40, at 10. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).

opposing party or by leave of this Court. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that leave to amend shall be freely given when "justice so requires." *Id.* "The decision to grant or deny leave to supplement a complaint is within the discretion of the district court, but leave should be freely given unless there is a good reason, such as futility, to the contrary." *Palacio v. Luckstone*, Civ. A. No. 22-2800 (RCL), 2023 WL 4450582, at *3 (D.D.C. Jul. 11, 2023) (internal quotation marks and citation omitted). "A proposed supplement to a complaint is futile if it would not survive a motion to dismiss." *Id.* (quoting *Lannan Found. v. Gingold*, 300 F. Supp. 2d 1, 12 (D.D.C. 2017)). "In assessing an argument that an amendment would be futile, the court must assess the proposed amendments under the same standard as would be applied to a motion to dismiss." *Oladokun v. Corr. Treatment Facility*, 5 F. Supp. 3d 7, 13 (D.D.C. 2013). And, in this case, this Court has – in this Opinion – considered Plaintiff's various proposed amendments. Ultimately, however, the Court finds that Plaintiff's proposed amendments would be futile. This is because Plaintiff's lawsuit in this Court is untimely, equitable tolling is not applicable, and there are no amendments that Plaintiff proffers that would cure this defect. Accordingly, dismissal of Plaintiff's Complaint is appropriate.

Dated: March 30, 2026

_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE